IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**DELOS P. FULWYLIE,**

      **Plaintiff,**

v.                                           **Civil Action No. 2:08cv76**
                                                 **(Judge Maxwell)**

**DR. MICHAEL WATERS,**
**PHYSICIAN ASSISTANT BLANCO,**
**MEDICAL ASSISTANT MATTUSKI,**

      **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

### I. Procedural History

On July 11, 2008, the *pro se* plaintiff initiated this civil action by filing a complaint against the above-named defendants pursuant to <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). (Dckt.1). On July 29, 2008, the plaintiff was granted permission to proceed as a pauper. (Dckt. 9). On December 10, 2008, the undersigned determined that summary dismissal of the petition was not warranted and the respondent was directed to file an answer. (Dckt. 15).

On April 8, 2009, the defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (Dckt. 31). Because the plaintiff is proceeding *pro se*, the Court issued a <u>Roseboro</u> Notice on May 26, 2009, which advised the plaintiff of his right to file a response to the defendants' motion. (Dckt. 34). The plaintiff did not file a response. This case is now before the undersigned for a report and recommendation on the defendants' motion to dismiss

## II. Contentions of the Parties

### A. The Complaint (Dckt. 1)

According to the complaint, in March of 2007, while the plaintiff was confined at the Federal Correctional Institution at Morgantown, West Virginia ("FCI Morgantown"), members of the institution's medical staff acted with deliberate indifference toward his serious medical needs. Specifically, plaintiff asserts that on March 14, 2007, his foot began to swell while he was working in the laundry detail. Because of his increasing pain, plaintiff became unable to work and was returned to his housing unit. On March 15, 2007, the plaintiff asserts that he was taken to medical services and given medication. That evening, plaintiff asserts that his foot continued to swell and ultimately split open at the rear of his leg and oozed blood and fluid. Plaintiff then asserts that he was returned to the medical department the next morning, March 16, 2007, and treated only with gauze and wraps to contain the blood and fluid.

Plaintiff asserts that, in spite of his immense pain, the defendants did not recommend that the plaintiff be removed from the institution and admitted to a hospital for additional treatment. Plaintiff asserts that he was carried to the medical department by other inmates on March 17th, 18th and 19th to receive treatment. Finally, on March 19, 2007, after believing that he would die if he stayed another day in that condition, the plaintiff asserts that he ordered staff to take him to an outside hospital. Plaintiff was then transferred to Ruby Memorial Hospital in Morgantown, WV, where two surgeries were performed on his leg and foot in order to contain an infection. While in the hospital, plaintiff also received a skin-graph from his right thigh to patch and cover the large hole that had formed behind his leg. He also was immediately placed on a dialysis machine to clean his blood from infection. This treatment continued through the filing of the complaint. Overall,

plaintiff remained in Ruby Memorial Hospital from March 19, 2007, until April 27, 2007.

Plaintiff asserts that because of the defendants' failure to treat his injuries in a timely manner, his kidney has been destroyed and will ultimately need to be replaced. In addition, plaintiff still cannot walk because of his swollen foot and is confined to a wheelchair. Plaintiff is in constant need of assistance and cannot work at any work detail within the prison. Finally, plaintiff asserts that doctors at the outside hospital have told him that if his foot does not return to its normal function and size, he may need to have his foot amputated in order to save his life.

As relief, the plaintiff seeks compensatory damages in the amount of ten million dollars, punitive damages, attorney fees and an order against the defendants.

**B.  The Defendants' Motion**

In their motion, the defendants request the dismissal or denial of the plaintiff's complaint for the following reasons:

(1) the plaintiff has failed to exhaust his administrative remedies;

(2) the plaintiff fails to state a claim for deliberate indifference;

(3) the defendants are entitled to qualified immunity;

(4) any Bivens claims against the defendants in their official capacities are barred by the doctrine of sovereign immunity.

### III.  Standards of Review

**A.  Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan

Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id.

Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual

4

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B.   Motion for Summary Judgment**

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . . must set forth specific facts showing

that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, at 587 (citation omitted).

## IV. Analysis

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford, 548 U.S. at

---

[1] Id.

6

92-94 (emphasis added). Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 101-102.

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Morgantown, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

In this case, it is apparent upon viewing the record that the plaintiff has not exhausted administrative remedies. In his complaint, plaintiff asserts that he has exhausted his administrative remedies in regards to this issue and attaches his evidence of the completed remedy to the complaint. However, this remedy attached by the plaintiff is not, in fact, evidence of proper adjudication of administrative remedy regarding this Bivens claim. The attachment the plaintiff provides to support his assertions is actually a letter from the Bureau of Prison's Mid-Atlantic Regional Office denying his Administrative Tort Claim.[2] This letter is not proper evidence of the exhaustion of his administrative remedies. The exhaustion requirement for a Bivens claim is separate and distinct from the exhaustion requirements under the Federal Tort Claims Act ("FTCA"). See Harris v.

---

[2] Tort Claim # TRT-MXR-2007-05467. See Dckt. 1 at Ex. 1

Lippen, 2005 WL 1330522 (N.D. W. Va., 2005.[3] In this complaint, plaintiff has alleged violations of his Eighth Amendment rights and liability under Bivens, not under the FTCA. In addition, plaintiff has titled his pleading as a "Bivens Complaint," not a FTCA complaint. Consequently, the plaintiff's allegation that he has exhausted his administrative remedies for his Bivens claim is false.

Furthermore, there is no evidence that the plaintiff has filed any administrative remedies related to his allegations of deliberate indifference.[4] In fact according to the sworn affidavit of Clarissa Owens, Legal Instruments Examiner, the plaintiff has not filed any administrative remedies regarding medical care by the staff of FCI Morgantown. (Dckt. 31 at Ex.1). Thus, it is clear from the complaint, and the plaintiff's exhibits, that he did not *fully* and *properly* exhaust his claim that the defendants were deliberately indifferent to his medical situation. For that reason, the defendants' motion to dismiss should be granted and this case dismissed with prejudice[5] from the active docket of this court. See Woodford, 548 U.S. at 85 ("Exhaustion is no longer left to the discretion of the district court, but is mandatory.").[6]

## V. Recommendation

For the foregoing reasons, the undersigned recommends that the defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (dckt. 31) be **GRANTED to the extent** that it seeks the dismissal of this case for the failure to exhaust. In all other respects, the

---

[3] Explaining that exhaustion under the FTCA is not sufficient to maintain Bivens claims.

[4] See Declaration of Clarrisa Owens, BOP Legal Instruments Examiner. Dckt. 31 at Ex.1.

[5] Dismissal with prejudice is appropriate because the plaintiff is now procedurally barred from raising his failure to protect claim in the administrative remedy process. See 28 C.F.R. 542.14(a) (a prisoner has 20 calendar days following the date on which the incident occurred, to file a formal administrative remedy).

[6] Because the plaintiff's claims are not exhausted, this court is otherwise without jurisdiction to consider the merits of the plaintiff's claim. Thus, the undersigned will not consider the additional arguments made by the defendants in their motion.

8

motion should be **DENIED as moot**.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket, and to counsel of record via electronic means.

DATED: July 24, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE